# CASE NO. 23-7247

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

ARTICLE 13, LLC,

*Plaintiff-Appellee,*

v.

LASALLE NATIONAL BANK ASSOCIATION;

*Defendant-Appellant,*

v.

PONCE DE LEON FEDERAL BANK;
ALLIANCE MORTGAGE BANKING CORP., and VAN BUREN
GROUP, INC.,

*Defendants.*

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF NEW YORK

## OPENING BRIEF OF DEFENDANT-APPELLANT

SUBMITTED BY:
Kathleen M. Massimo
Houser LLP
60 E. 42nd Street, Suite 2200
New York, New York
Tel: (212) 490-333
kmassimo@houser-law.com

A

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................1

JURISDICTIONAL STATEMENT .........................................................2

STATEMENT OF THE ISSUES...............................................................3

STATEMENT OF THE CASE...................................................................3

    A. Article 13 Obtains a Property Secured by a Consolidated Mortgage in

    Default......................................................................................................3

    B. CMC's Improper Foreclosure Action (the "2007 Action")............5

    C. Article 13's Quiet Title Action .......................................................7

    D. The Amended Complaint and the Motion for Reconsideration ....9

SUMMARY OF THE ARGUMENT .......................................................13

ARGUMENT ..........................................................................................14

I. THE FORECLOSURE ABUSE PREVENTION ACT IS NOT AN

INTERVENING CHANGE OF CONTROLLING LAW BECAUSE THE ACT IS

NOT INTENDED TO APPLY RETROACTIVELY AND CANNOT BE

CONSTITUTIONALLY APPLIED RETROACTIVELY..................................14

    A. The Law Disfavors Retroactive Legislation. ................................15

    B. FAPA Lacks the Necessary Clear and Unequivocal Expression of

    Legislative Intent that CPLR § 3217(e) Should Apply Retroactively...............18

i

II. RETROACTIVE APPLICATION OF CPLR § 213(4)(b) WOULD BE

UNCONSTITUTIONAL. ...........................................................................22

    A. Retroactive Application of FAPA Violates the Contract Clause of the

    Constitution..........................................................................................22

        *i. Retroactive Application of CPLR § 3217(e) Would Substantially*

        *Impair Appellant's Contractual Right to Enforce the Mortgage*

        *Contract.* .......................................................................................23

        *ii. No Legitimate and Necessary Public Interest Supports the*

        *Retroactive Destruction of Mortgage Contracts.* ..........................25

    B. FAPA, Applied Retroactively, Would Violate U.S. Bank as Trustee's

    Substantive Due Process Rights Guaranteed by The Fifth and Fourteenth

    Amendments to the United States Constitution and the New York

    Constitution..........................................................................................32

    C. Retroactive Application of FAPA Would Violate U.S. Bank as Trustee's

    Guaranteed Constitutional Right to Procedural Due Process............................34

    D. Retroactive Application of CPLR § 213(4)(b) Would Accomplish a

    Taking Without Just Compensation, Violative of the Takings Clause of the

    Constitution..........................................................................................35

CONCLUSION ........................................................................................36

CERTIFICATE OF COMPLIANCE.............................................................37

# TABLE OF AUTHORITIES

## Cases

*35 Park Ave. Corp. v. Campagna,* 48 N.Y.2d 813, 815 (N.Y. 1979)......................18

*Aguaiza v. Vantage Props., LLC,* 69 A.D.3d 422, 423 (N.Y. App. Div. 2010)......21

*Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244-245 n.16, 98 (U.S. 1978) .................................................................................................. 23, 26

*Armstrong v. United States*, 364 U.S. 40, 48 (U.S.1960) ........................................36

*Bailey v. United States,* 78 Fed. Cl. 239, 276 (Fed. Cl. 2007)................................36

*Bros. v. Florence,* 95 N.Y.2d 290, 300 (N.Y. 2000) ...............................................35

*Buffalo Tchrs. Fed'n v. Tobe,* 464 F.3d 362, 368 (2d Cir. 2006).................... 24, 25

*Butler v. Gonzalez,* No. 09-cv-1916, 2010 WL 3398156, at * 5 (S.D.N.Y. May 18, 2010)...................................................................................................................8

*Calder v. Bull,* 3 U.S. 386, 388 (U.S. 1798) ..........................................................36

*Cruz v. TD Bank, N.A.,* 22 N.Y.3d 61, 72, 979 (N.Y. 2013) ...................................19

*Davis v. Supreme Lodge Knights of Honor,* 165 N.Y. 159, 170 (N.Y. 1900).........24

*Energy Reserves Group, Inc. v. Kansas Power & light Co.*, 459 U.S. 400, 411-412 (U.S. 1983) ................................................................................................. 23, 25

*Holly S. Clarendon Tr. v. State Tax Comm'n,* 43 N.Y.2d 933, 934 (N.Y. 1978).. 32, 33

*Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, 429 (U.S. 1934) 24, 26, 31

*Jackson ex dem. Merrick v. Post,* 15 Wend. 588 (N.Y. Sup. Ct. 1836) ..................28

*Jacobus v. Colgate,* 217 N.Y. 235, 240 (N.Y.1916)......................................... 16, 18

*Kelo v. City of New London*, 545 U.S. 469, 473 n.1 (U.S. 2005)...........................35

*Kuryak v. Adamczyk,* 265 A.D.2d 796, 796 (N.Y. App. Div. 1999) ......................21

*Landgraf v. USI Film Prod.,* 511 U.S. 244, 265 (U.S.1994)............... 16, 17, 18, 32

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.,* 91 N.Y.2d 577, 584 (N.Y.1998) .16

*Mark G. v. Sabol,* 93 N.Y.2d 710, 723 (N.Y. 1999).................................................34

*Marrero v. Nails,* 114 A.D.3d 101, 112 (N.Y. App. Div. 2013) ............................21

*Matter of Chrysler Props. v. Morris*, 23 N.Y.2d 515, 521 (N.Y. 1969).................17

*Matter of Jacob,* 86 N.Y.2d 651, 667 (N.Y. 1995)..................................................17

*Matter of Lorie C,* 49 N.Y.2d 161, 171 (N.Y. 1980)...............................................17

*MLB Sub I, LLC v. Grimes,* 96 N.Y.S.3d 594, 597 (N.Y. App. Div. 2019) 6, 10, 13, 14, 27, 33

*People v. Viviani,* 36 N.Y.3d 564, 579 (N.Y. 2021).................................................17

*Periconi v. State,* 398 N.Y.S.2d 959 (Ct. Cl. 1977)..................................................34

*Permanent Mission of India to the United Nations v. City of New York,* 551 U.S. 193, 198 (U.S. 2007) ...........................................................................................34

iv

*Pryce v. Nationstar Mortg. LLC,* 131 N.Y.S.3d 832, 839 (N.Y. Sup. Ct. 2020)  6, 8, 10, 14

*Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal,* 35 N.Y.3d 332, 370 (N.Y.2020)............................................................ 16, 17, 18, 32

*Ruth v. Elderwood at Amherst,* 209 A.D.3d 1281, 1285 (N.Y. App. Div. 2022)....19

*Sanitation & Recycling Indus.,* 107 F.3d 985, 993 (2d Cir. 1997) ............ 24, 25, 26

*Saxon Mortg. Servs. v. Jackman,* 969 N.Y.S.2d 806, 806 (N.Y. Sup. Ct. 2012) ......9

*Sprint Equities (N.Y.), Inc. v. Sylvester,* 896 N.Y.S.2d 134, 135 (N.Y. App. Div. 2010).............................................................................................................28

*Sturges v. Crowninshield,* 17 U.S. 122, 184 (U.S. 1819) .......................................24

*Sveen v. Melin*, 138 S.Ct. 1815, 1821 (U.S. 2018) .................................................23

*U.S. Tr. Co. of New York v. New Jersey, 431 U.S.* at 22–23 (U.S. 1977) ..............25

*U.S. v. Salerno,* 481 U.S. 739, 746 (U.S. 1987) .....................................................32

*U.S. v. Security Indus. Bank,* 459 U.S. 70 (U.S. 1982)...........................................36

*W.B. Worthen Co. ex rel. Bd. Of Comm'rs of St. Imp. Dist. No. 513 of Little Rock, Ark. V. Kavanaugh,* 295 U.S. 56, 60 (U.S. 1935) ......................................... 24, 28

*Wade v. Byung Yang Kim,* 250 A.D.2d 323, 325 (N.Y. App. Div. 1998)..............34

*Wells Fargo Bank, N.A. v. Burke,* 943 N.Y.S.2d 540, 543 (N.Y. App. Div. 2012) ....................................................................................................................6,33

*Wood v. Oakley,* 11 Paige Ch. (N.Y. Ch. 1845) ......................................................34

v

## Statutes

28 U.S.C. § 1291 ...................................................................................2

28 U.S.C. § 1332(a) ..............................................................................2

CPLR § 213(4) .......................................................................................9

CPLR § 213(4)(b) ........................................... 9, 12, 15, 16, 22, 28, 31, 35

CPLR § 214(3)(b) ...............................................................................18

CPLR 213(4)(b) .....................................................................................3

RPAPL § 1501(4) ...............................................................................7, 9

## Other Authorities

McKinney's Cons Laws of NY, Book 1, Statutes § 51(b) .....................................21

New York State Senate Bill S5473D Sponsor Memorandum.......................... 12, 20

New York State Senate Bill S5473D Sponsor Memorandum (revised May 4, 2022)

......................................................................................................11

## Rules

NY LEGIS 821 (2022) ..........................................................................21

## PRELIMINARY STATEMENT

This appeal arises from Plaintiff-Appellee Article 13, LLC's ("Article 13") action, pursuant to RPAPL § 1501(4), to secure cancellation and discharge of record of two consolidated mortgages encumbering residential property located at 53 Van Buren Street, Brooklyn, New York 11221 (the "Property"). (R. 150-151.) Defendant-Appellant U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2007-2AX, Mortgage Pass-Through Certificates, Series 2007-2AX (sued herein as, LaSalle National Bank Association and hereinafter referred to as "U.S. Bank as Trustee") is the owner and holder of the two consolidated loans secured by consolidated mortgages recorded against the Property, which Article 13 seeks to cancel and discharge. (R. 151-152.)

U.S. Bank as Trustee appeals from the Memorandum and Order of the Honorable Hector Gonzales, United States District Court Judge for the Eastern District of New York (the "Order"), which granted Article 13's motion for reconsideration and allowed Article 13's requested relief. (R. 1-14, 267.) The Order incorrectly concluded that New York's Foreclosure Abuse Prevention Act ("FAPA") was an intervening change of controlling law that justified reconsideration of the District Court's prior order denying summary judgment, and

that FAPA § 7 (codified at CPLR § 213(4)(b)) applied retroactively and estopped U.S. Bank as Trustee from asserting that an attempted acceleration of the mortgage debt in 2007, by an unauthorized plaintiff, was invalid. (R. 13-14.)

In fact, FAPA is not retroactive. The statute contains no clear and unequivocal legislative intent that it has retroactive effect. Therefore, FAPA cannot eliminate U.S. Bank as Trustee's right to assert an affirmative defense that the debt was not accelerated by an unauthorized foreclosure action 15 years prior to FAPA's enactment. Moreover, construing FAPA to have a retroactive effect is forbidden because it would violate U.S. Bank as Trustee's vested rights, in contravention of the United States and New York Constitutions. Accordingly, the District Court erred when it concluded that U.S. Bank as Trustee's right to enforce its consolidated mortgages is forever time barred under FAPA, and this Court should reverse.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the District Court entered judgment, on August 15, 2023 (R. 267.), and U.S. Bank as Trustee filed a timely Notice of Appeal, on September 8, 2023. (R. 1-2.)

## STATEMENT OF THE ISSUES

1.     Whether the District Court abused its discretion in granting Article 13's motion for reconsideration where no court had yet interpreted that CPLR 213(4)(b) may apply retroactively to a long-dismissed foreclosure action.

2.     Whether the District Court clearly erred in concluding that FAPA applies retroactively and estops U.S. Bank as Trustee from asserting that the prior servicer lacked standing to accelerate the debt start the six-year statute of limitations.

3.     Whether the District Court clearly erred in concluding that applying FAPA retroactively is not an unconstitutional violation of U.S. Bank as Trustee's rights.

## STATEMENT OF THE CASE

### A. Article 13 Obtains a Property Secured by a Consolidated Mortgage in Default

On May 27, 2005, JAJ Corp. borrowed $350,000.00 from Defendant Ponce de Leon Federal Bank against the Property. (R. 45-46, 151.) The loan was memorialized by a promissory note and secured by a first mortgage on the Property, which was recorded on July 15, 2005. (*Id.*) On September 18, 2006, JAJ Corp. conveyed the Property to Lisa Abbott ("Abbott"). (*Id.*) On September 18, 2006, Abbott borrowed $322,475.00 against the Property from Defendant Alliance Mortgage Banking Corp. ("Alliance"). (R. 46, 151-152.) The second loan was

memorialized by a promissory note and secured by a second mortgage on the Property, which was recorded on September 28, 2006. (*Id.*)

On September 18, 2006, the two loans were consolidated to form a single mortgage lien (the "Consolidated Mortgage") by a consolidation, extension, and modification agreement. (*Id.*) In connection with the Consolidated Mortgage, Abbott executed a consolidated note (the "Consolidated Note") in favor of Alliance.[1] (*Id.*) On October 25, 2006, the original indorsed-in-blank Consolidated Note was physically delivered to the document custodian, "LaSalle Bank National Association." (R. 48.) The Consolidated Loan was sold to a residential mortgage-backed securities trust, known as "Morgan Stanley Mortgage Loan Trust 2007-2AX, Mortgage Pass-Through Certificates, Series 2007-2AX" (the "Trust"), which closed on or before January 31, 2007. (R. 47-48, 152.) The Trust has owned and held the Consolidated Loan ever since. (*Id.*) Alliance indorsed the original Consolidated Note in blank, in connection with the securitization of the Consolidated Loan. (R. 48, 151.) By assignments of mortgage dated September 12, 2007 and dated January 29, 2009, the mortgages, as consolidated, were assigned of record to the Trust. (R. 48-49, 152.) U.S. Bank National Association is the current trustee and document custodian for the Trust. (R 47-48.) The Trust's pooling and servicing agreement

---

[1] The Consolidated Mortgage and the Consolidated Note and referred to herein collectively as the "Consolidated Loan"

requires that mortgages included as assets of the Trust be foreclosed only in the name of and on behalf of the trustee (which is currently, U.S. Bank as Trustee), and in its capacity as the trustee for the Trust. (R. 47.)

Abbott breached her obligations under the Consolidated Loan by failing to make the installment that became due and payable on February 1, 2007 and any subsequent installments. (R. 48, 152.) The indebtedness secured by the Consolidated Mortgage consists of the unpaid principal balance of $645,000.00, plus accrued interest, together with unpaid late charges and any advances made or to be made to protect the security interests, including attorneys' fees and other legal expenses. (R. 48-49.) For more than 15 years, U.S. Bank as Trustee has paid for the Property's real estate taxes and hazard insurance. (*Id.*) As of June 30, 2022, the total amount due to satisfy the Consolidated Loan in full was $1,375,802.46. (*Id.*)

## B. CMC's Improper Foreclosure Action (the "2007 Action")

On August 27, 2007, based upon Abbott's default, the then servicer of the Consolidated Loan, Central Mortgage Company ("CMC"), commenced an action in New York state court to foreclose the Consolidated Mortgage. (R. 152.) The complaint was incorrectly brought by CMC and in CMC's name. (*See* R. 38-40, 150-167.) CMC was never the holder of the Consolidated Loan and the complaint fails to identify CMC as merely the servicer and not the owner of the Consolidated Loan. (*Id.*) Vis-a-vis the commencement of the 2007 Action, CMC unlawfully purported

to accelerate the indebtedness secured by the Consolidated Mortgage. Notwithstanding, there is no genuine issue of material fact that CMC was not the owner of the Consolidated Loan. (R. 160.) CMC was not the holder of the Consolidated Note, and it was not assigned the Consolidated Mortgage. (R. 38-39.) Under New York law, CMC did not have standing with which to commence an action to enforce the Consolidated Loan and therefore did not accelerate the debt in 2007. *MLB Sub I, LLC v. Grimes,* 96 N.Y.S.3d 594, 597 (N.Y. App. Div. 2019) (citing *Wells Fargo Bank, N.A. v. Burke,* 943 N.Y.S.2d 540, 543 (N.Y. App. Div. 2012)); *see also Pryce v. Nationstar Mortg. LLC,* 131 N.Y.S.3d 832, 839 (N.Y. Sup. Ct. 2020) ("[W]here the plaintiff lacks standing to commence the foreclosure action, service of the complaint is ineffective to constitute a valid exercise of the option to accelerate the mortgage debt. In such circumstances, the purported acceleration is deemed a nullity, and it does not cause the six-year statute of limitations on enforcement of the entire mortgage debt to begin to run.").

On June 4, 2012, Abbott purportedly conveyed the Property to ABC Investors Management Corp. ("ABC"). (R. 37.) On February 17, 2016, ABC purportedly conveyed the Property to Defendant Van Buren Group Inc. ("Van Buren"). (*Id.*)

On May 1, 2017, CMC moved to voluntarily discontinue the 2007 Action without prejudice, and, on June 8, 2017, the trial court discontinued it without prejudice and canceled the notice of pendency. (R. 152, 192-197.)

### C. Article 13's Quiet Title Action

On August 6, 2020, Article 13 filed the underlying quiet title action in the United States District Court for the Eastern District of New York against U.S. Bank as Trustee (sued herein as LaSalle National Bank Association), CMC, Alliance Mortgage Banking Corp., and Ponce de Leon Federal Bank, Case 1:20-cv-03553-HG-RML. (R. 150.) Article 13 claims that the Consolidated Mortgage should be cancelled and discharged of record because enforcement would be time barred by the six-year statute of limitations RPAPL § 1501(4). (R. 150-167.)

On June 10, 2022, U.S. Bank as Trustee moved for summary judgment in the case, arguing, inter alia, that Article 13's complaint failed to join all necessary parties, that the applicable statute of limitations for commencing an action to foreclose the Consolidated Mortgage has not expired, and that Article 13's failure to file a notice of pendency warranted dismissal. (R. 15-32, 150-167.) The same day, Article 13 also moved for summary judgment.[2] Both parties opposed each other's motion. (R. 150-167.) On October 14, 2022, U.S. Bank as Trustee

---

[2] On July 7, 2022, U.S. Bank as Trustee and Article 13 stipulated to dismiss Article 13's first cause of action regarding whether the First Mortgage and the Second Mortgage were consolidated. (R. 150.)

7

submitted a reply in further support of its motion. On December 28, 2022, the District Court denied both motions and directed Article 13 to join Van Buren as a necessary party to the action, and further directed Article 13 to file a notice of pendency. (R. 150-167.)

In declining to dismiss the action for Article 13's failure to join Van Buren, who the District Court concluded was a necessary party, the District Court concluded that U.S. Bank as Trustee would not be prejudiced by granting Article 13 leave to join, and specifically noted that Article 13 "stipulates that any amendment to join Van Buren 'would not introduce new legal theories or claims' against [U.S. Bank as Trustee], and that it 'would not seek to amend the [action] to add additional claims which would require further discovery or resources.'" (R. 156.) The District Court specifically ordered that Article 13 "is not permitted new claim or legal theories against [U.S. Bank as Trustee]." (R. 167.)

The District Court also addressed U.S. Bank as Trustee's argument that CMC was not the owner of the Consolidated Loan at the time it commenced the 2007 Action. (R. 158-160). The District Court found that "any identification of CMC as owner is factually incorrect, and CMC lacked standing to foreclose as owner of the Note and Senior Mortgage." (*Id.*) (citing *see Pryce,* 131 N.Y.S.3d 832, 840 (N.Y. Sup. Ct. 2020); *see also Butler v. Gonzalez,* No. 09-cv-1916, 2010 WL 3398156, at * 5 (S.D.N.Y. May 18, 2010)). The District Court also concluded

8

that CMC "did not have authority to initiate the foreclosure action in its capacity as servicer." (R. 163.) (citing *Saxon Mortg. Servs. v. Jackman,* 969 N.Y.S.2d 806, 806 (N.Y. Sup. Ct. 2012)). The District Court, however, found a genuine dispute of material fact regarding whether CMC was the assignee of the First Mortgage and holder of the Consolidated Note at the time it commenced the 2007 Action. (R. 162-163.)

**D. The Amended Complaint and the Motion for Reconsideration**

On January 5, 2023, Article 13 filed a first amended complaint, joining Van Buren and reasserting one claim pursuant to RPAPL § 1501(4) to cancel and discharge of record the Consolidated Mortgage on the grounds that the six-year statute of limitation CPLR § 213(4) had run from the commencement of the 2007 Action. (R. 168-174.) On March 20, 2023, U.S. Bank as Trustee timely interposed an answer. (R. 261-266.)

On December 30, 2022, New York enacted FAPA and with it new CPLR § 213(4)(b). That section purports to abrogate long-standing New York law permitting a mortgagee to defend against claims attacking the enforceability of its mortgage by asserting an affirmative defense that an unauthorized plaintiff in a prior action lacked the requisite standing to commence foreclosure and accelerate the debt. *See* CPLR § 213(4)(b). Prior to FAPA, it was well-settled New York law that commencement of a foreclosure action is "ineffective to constitute a valid

9

exercise of the option to accelerate a debt where the plaintiff does not 'have the authority to accelerate the debt or to sue to foreclose at that time. . . '" which does not trigger the statute of limitations. *MLB Sub I, LLC,* 96 N.Y.S.3d at 597; (citing *Wells Fargo Bank, N.A.* 943 N.Y.S.2d at 543); *see also Pryce,* 131 N.Y.S.3d at 839 ("[W]here the plaintiff lacks standing to commence the foreclosure action, service of the complaint is ineffective to constitute a valid exercise of the option to accelerate the mortgage debt. In such circumstances, the purported acceleration is deemed a nullity, and it does not cause the six-year statute of limitations on enforcement of the entire mortgage debt to begin to run."). Based on binding precedent preceding FAPA, it is U.S. Bank as Trustee's affirmative defense to Article 13, LLC's claims herein that CMC's 2007 Action did not accelerate the debt and thus did not trigger the running of the six-year statute of limitations. *See* CPLR § 213(4).

On January 11, 2023, Article 13 filed a motion for reconsideration of the District Court's order denying the cross-motions for summary judgment. (R. 175-190.) Article 13 asserted a brand-new legal theory, in the now two-and-a-half-year-old lawsuit, that FAPA's amendment to CPLR § 213(4)(b) constituted an intervening change in the controlling law that warranted the Court's attention on reconsideration. (R. 175-190.) U.S. Bank as Trustee opposed Article 13's motion, explaining that 1) FAPA is not an intervening change in the controlling law of the

case justifying reconsideration because it cannot be applied retroactively; 2) given FAPA cannot apply to the instant action, the District Court's earlier determination was still valid that, pursuant to New York law, there was a question of fact as to whether CMC lacked standing to accelerate the Consolidated Loan debt and thus did not trigger the statute of limitations by commencing the 2007 Action; and 3) even if the Legislature intended FAPA to be applied retroactively, it cannot be applied retroactively because retroactive application would violate U.S. Bank as Trustee's constitutional rights. (R. 215-226.)

On August 11, 2023, the District Court incorrectly rejected U.S. Bank as Trustee's arguments and granted Article 13's motion for reconsideration, directing entry of summary judgment in favor of Article 13. (R. 3-14.) The District Court found that FAPA is an intervening change of controlling law. (R. 8.) The District Court reasoned that CPLR § 213(4)(b) renders acceleration events presumptively valid unless there is an express judicial determination that no valid election to accelerate occurred. (*See* R. 8.) (citing *See* New York State Senate Bill S5473D Sponsor Memorandum (revised May 4, 2022), https://www.nysenate.gov/legislation/bills/2021/S5473 (last visited August 11, 2023)). Thus, the District Court concluded that "even if CMC lacked standing at the time it initiated the Foreclosure Action, under the FAPA, Defendant LaSalle is now estopped from claiming that this acceleration event was not valid. . . ." (R. 9.)

11

The District Court concluded that the New York Legislature intended CPLR § 213(4)(b) to apply retroactively, relying on statement that FAPA "is intended to apply to all pending actions . . . in which a judgment of foreclosure and sale has not been enforced." (R. 10.) Further, the District Court relied on the New York Legislature's vague and unsupported statement that:

> [T]here is an ongoing problem with abuses of the judicial foreclosure process; that the problem has been exacerbated by court decisions which, contrary to the intent of the Legislature, have given mortgage lenders and loan servicers opportunities to avoid strict compliance with remedial statutes and manipulate statutes of limitation to their advantage; and that the purpose of the present remedial legislation is to clarify the meaning of existing statutes, codify correct judicial applications thereof, and rectify erroneous judicial interpretations thereof.

The District Court concluded that retroactive application of FAPA is supported by a legitimate legislative purpose. (R. 10-11.) (citing New York State Senate Bill S5473D Sponsor Memorandum). Accordingly, the Court retroactively applied the statute and reversed its ruling on the parties' cross-motions for summary judgment. (*Id.*) The Court found that, in light of the enactment of FAPA, by default CMC's improper foreclosure action in 2007 was a valid acceleration of the debt, and the statute of limitations had expired on U.S. Bank as Trustee's ability to foreclose. (*Id.*)

On August 15, 2023, Judgment was entered. (R. 267.) On September 8, 2023, U.S. Bank as Trustee filed a timely Notice of Appeal. (R. 1-2.)

## SUMMARY OF THE ARGUMENT

The District Court erred when it concluded that FAPA created an intervening change of controlling law that justified reconsideration of the District Court's prior order. In 2007 and in 2017, when CMC improperly commenced foreclosure without standing, New York law did not require a mortgagee or note holder to obtain "an express judicial determination" to preserve the defense that a mortgage loan was not validly accelerated. *E.g. MLB Sub I, LLC,* 96 N.Y.S.3d at 597. FAPA was enacted on December 30, 2022. FAPA neither intervened nor controlled events that occurred from 2007-2017. FAPA does not apply retroactively to undo or materially change what occurred more than five years before its enactment because FAPA is devoid of a clear expression of unequivocal retroactive Legislative intent. FAPA cannot be retroactively applied. As a matter of New York law, then in existence and well-established at that time, CMC's unauthorized commencement of foreclosure did not accelerate the Consolidated Loan.

Further, retroactive application of CPLR § 213(4)(b), violates U.S. Bank as Trustee's vested real property rights, and the right to enforce its real property rights in court—rights which are protected by the U.S. and New York Constitutions. But for the District Court's incorrect retroactive application of FAPA, U.S. Bank as Trustee would have a right to a trial on the genuine fact issue of whether CMC was

13

the assignee of the first mortgage and holder of the Consolidated Note at the time it commenced the 2007 Action and U.S. Bank as Trustee would have the contractual right to commence an action to foreclose the Consolidated Loan. These Constitutions bar the New York Legislature from wiping away U.S. Bank as Trustee's vested rights overnight and without due process of law. Accordingly, this Court should reverse the District Court's Order.

## ARGUMENT

I. **THE FORECLOSURE ABUSE PREVENTION ACT IS NOT AN INTERVENING CHANGE OF CONTROLLING LAW BECAUSE THE ACT IS NOT INTENDED TO APPLY RETROACTIVELY AND CANNOT BE CONSTITUTIONALLY APPLIED RETROACTIVELY.**

Under prevailing New York precedent at the time CMC commenced the 2007 Action **without standing**, through 2017 when that action was dismissed, and for five more years until FAPA was enacted in December 2022, it was well settled that commencement of a foreclosure action was "ineffective to constitute a valid exercise of the option to accelerate a debt where the plaintiff [did] not 'have the authority to accelerate the debt or to sue to foreclose at that time.'" *MLB Sub I, LLC,* 96 N.Y.S.3d at 597 (citing *Wells Fargo Bank, N.A.,* 943 N.Y.S.2d at 543); *Pryce v. Nationstar Mortg. LLC,* 131 N.Y.S.3d 832, 839 (N.Y. Sup. Ct. 2020). Thus, in 2007, under then existing New York law, CMC's unauthorized commencement of foreclosure did not accelerate the debt.

Article 13 hoodwinked the District Court into concluding that CPLR § 213(4)(b) should apply retroactively to events that occurred many years before its enactment, resulting in the District Court's default decision that CMC lawfully accelerated the debt in 2007, and erroneous conclusion that the statute of limitations had expired. This application is both unfair and unreasonable—and as discussed further below, it is unconstitutional. It was impossible for U.S. Bank as Trustee to preserve its affirmative defense five years ago when the 2017 Action was discontinued because U.S. Bank as Trustee does not possess the ability to peer into the future to know what the law will become. Thus, U.S. Bank as Trustee had no opportunity to protect its rights under CPLR 213(4)(b). If it had, U.S. Bank as Trustee certainly would have intervened in the 2007 Action to interpose a defense that CMC did not have standing to foreclose, and would have insisted upon "an express judicial determination" that the Consolidated Loan was not accelerated in 2007.

Retroactive application of CPLR § 213(4)(b) is contrary to the centuries old legal doctrine prohibiting retroactive legislative acts that purport to substantially eliminate substantive rights, without a legitimate basis, without a grace period, without due process, and without compensation. Accordingly, the District Court erred when it concluded that FAPA applies retroactively.

**A. The Law Disfavors Retroactive Legislation.**

15

The District Court erred in failing to interpret CPLR § 213(4)(b) as a statute allowing only prospective application. As a matter of statutory interpretation, the District Court was required to presume that CPLR § 213(4)(b) did not apply retroactively. There is a "deeply rooted" presumption against retroactive application of law; it is based on "[e]lementary considerations of fairness [that] dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal,* 35 N.Y.3d 332, 370 (N.Y.2020) (quoting *Landgraf v. USI Film Prod.,* 511 U.S. 244, 265 (U.S.1994). *See also id*. "[G]enerally, a statute is presumed to apply only prospectively." *Id.* (citing *Majewski v. Broadalbin-Perth Cent. Sch. Dist.,* 91 N.Y.2d 577, 584 (N.Y.1998)); *Jacobus v. Colgate,* 217 N.Y. 235, 240 (N.Y.1916). Where retroactive application would interfere with already established contractual or property rights, the presumption against retroactive application is even stronger. Thus, the Supreme Court of the United States instructs:

> The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance. . . If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result. . . .

*Landgraf*, 511 U.S. at 271-280. Other opinions note that "careful consideration of retroactive statutes is warranted because '[t]he Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration,' and '[i]ts responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals.'" *Regina*, 35 N.Y.3d at 370 (quoting *Landgraf*, 511 U.S. at 266). Thus, "retroactive legislation is viewed with 'great suspicion.'" *Id.* (quoting *Matter of Chrysler Props. v. Morris*, 23 N.Y.2d 515, 521 (N.Y. 1969)). These traditional cannons strongly disfavor retroactive application of CPLR § 213(4)(b) to CMC's improper commencement of foreclosure more than 15 years ago and well before FAPA's conception.

Moreover, prospective rather than retrospective application of CPLR § 213(4)(b) is necessary to avoid doubt concerning the constitutionality of the provision. *Matter of Lorie C,* 49 N.Y.2d 161, 171 (N.Y. 1980) (citation omitted); *see also People v. Viviani,* 36 N.Y.3d 564, 579 (N.Y. 2021) (quotation omitted). Where "the language of a statute is susceptible of two constructions, the courts will adopt that which avoids injustice, hardship, constitutional doubts or other objectionable results." *Matter of Jacob,* 86 N.Y.2d 651, 667 (N.Y. 1995) (quotation omitted).

Applying FAPA to the instant case would clearly give FAPA retroactive effect. A statute has retroactive effect if it would (1) impair the rights that a party possessed when it acted, (2) increase that party's liability for past conduct, or (3) impose new duties with respect to transactions already completed, thus impacting that party's substantive rights. *Regina*, 35 N.Y.3d at 365 (citing *Landgraf,* 511 U.S. at 278-280). Without dispute, application of FAPA here would accomplish all such things by eliminating U.S. Bank as Trustee's bargained-for contractual remedy to enforce its lien; namely, foreclosure.

## B. The Legislature did Not Intend for CPLR § 214(3)(b) to Apply Retroactively.

The District Court also erred in failing to recognize that a statute cannot be applied retroactively unless the Legislature expresses a clear and unequivocal intent for retroactive application. The language of FAPA provides no suggestion that the Legislature intended FAPA to apply retroactively. For an act to be retroactive, "[a]n intent on the part of the Legislature to effect so drastic a consequence ***must be expressed clearly and unequivocally***." *35 Park Ave. Corp. v. Campagna,* 48 N.Y.2d 813, 815 (N.Y. 1979) (citation omitted) (emphasis added); *Jacobus,* 217 N.Y. at 240 ("It takes a clear expression of the legislative purpose to justify a retroactive application."). This assures that the Legislature "itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits."

18

*Ruth v. Elderwood at Amherst,* 209 A.D.3d 1281, 1285 (N.Y. App. Div. 2022)
(quotation omitted). The "expression of intent ***must*** be sufficient to show that the
legislature ***contemplated the retroactive impact on substantive rights and
intended that extraordinary result*.**" *Id.* (emphasis added) (quoting *Regina,* at 370-
371).

For this analysis, the act's language is the starting point. *Id.* at 1287 (quoting
*Majewski,* 91 N.Y.2d at 583). FAPA's language fails unequivocally to demonstrate
that the Legislature considered the drastic results of retroactive application of
FAPA—namely, the revocation of U.S. Bank as Trustee's (and countless other
mortgagees') right to enforce liens—and nevertheless intended them. "[W]hen
interpreting a statute, courts typically do not rely on legislative silence to infer
significant alterations of existing law on the rationale that legislative bodies
generally do not 'hide elephants in mouseholes.'" *Cruz v. TD Bank, N.A.,* 22
N.Y.3d 61, 72, 979 (N.Y. 2013) (citation omitted). Based on the long-standing
cannon against the presumption of retroactive legislative intent, especially where
the Legislature did not so declare, CPLR § 213(4)(b)—enacted at the very end of
2022—cannot be read to apply to the improper 2007 Action commenced by CMC
who lacked authority, or CMC's voluntary discontinuance in 2017 "without an
express judicial determination . . . that the instrument was not validly accelerated."

According to the New York State Assembly Memorandum in Support of Legislation, the New York Legislature stated that the purpose of FAPA is, vaguely:

> [T]o thwart and eliminate abusive and unlawful litigation tactics that have been adopted and pursued in mortgage foreclosure actions to manipulate the law and judiciary to yield to expediency and the convenience of mortgage banking and services institutions at the expense of the finality and repose that statutes of limitations are meant to ensure.

2022 NY Senate Bill S5473D. The Legislature failed, though, to identify any such suggested abuses or tactics, nor to demonstrate their prevalence or harmful effects, nor to indicate that it considered any harmful results of retroactive application but nevertheless intended them. These fatal flaws aside, the Legislature's stated goal of "thwarting and eliminating" unidentified abusive conduct indicates an intent to apply prospectively only; otherwise, the Legislature could have used the words "overturn," "unwind," or "reverse," or other similar language suggesting an intent to change past conduct as well as future conduct. Here, the Legislature's stated intent indicates CPLR § 213(4)(b)'s purpose is to change future conduct. 2022 NY Senate Bill S5473D.

Further, the Memorandum in Support of Legislation refers only to unspecified *future* abuses and tactics, and indicates absolutely no intent to overturn existing decisions that relied on preexisting law. In other words, the Legislature's intent for FAPA is merely prospective and with respect only to future conduct that occurs after the statute's enactment.

20

Here, the language used by the Legislature conveys an immediate—but not retroactive—effect. Section 10 of FAPA states that "[t]his act shall take effect *immediately* and *shall* apply to all actions commenced on an instrument described under subdivision four of section two hundred thirteen of the civil practice law and rules in which a final judgment of foreclosure and sale has not been enforced." NY LEGIS 821 (2022), 2022 Sess. Law News of N.Y. Ch. 821 (A. 7737-B) (emphasis added). But "[a]s a matter of statutory interpretation, where a statute by its terms directs that it is to take effect immediately, it does not have any retroactive operation or effect." *Aguaiza v. Vantage Props., LLC,* 69 A.D.3d 422, 423 (N.Y. App. Div. 2010) (internal quotation and citation omitted); *see also Marrero v. Nails,* 114 A.D.3d 101, 112 (N.Y. App. Div. 2013). Likewise, statutes like FAPA that are framed in future words like "shall" or "hereafter" are construed to convey a prospective intent only. *Kuryak v. Adamczyk,* 265 A.D.2d 796, 796 (N.Y. App. Div. 1999) (quoting McKinney's Cons Laws of NY, Book 1, Statutes § 51(b)); *Landgraf,* 511 U.S. at 288 (Scalia, J., concurring) ("'Shall take effect upon enactment,' is presumed to mean 'shall have prospective effect upon enactment.'").

In fact, the Legislature provided absolutely no indication—let alone the requisite clear and unequivocal intent—that CPLR § 213(4)(b) was intended to apply to eliminate a mortgagee's affirmative defense that a foreclosure action was improperly commenced by a party without authority and therefore did not

21

accelerate the debt. Neither provision indicates any clear or unequivocal legislative intent that, despite any harmful results considered (of which there were none), CPLR § 213(4)(b) should apply to unauthorized actions commenced and dismissed decades prior by a completely different party. Thus, giving effect to the language of the entire statute, as the courts must, and paying due presumption against retroactivity, the changes made by FAPA do not apply retroactively to the 2007 Action.

## II. RETROACTIVE APPLICATION OF CPLR § 213(4)(b) WOULD BE UNCONSTITUTIONAL.

Even if this Court disagrees that the Legislature did not intend the retroactive application of CPLR § 213(4)(b), such retroactive application would be unconstitutional, and therefore must not be allowed.

### A. Retroactive Application of CPLR § 213(4)(b) Would Violate the Contract Clause of the U.S. Constitution

Retroactive application of CPLR § 213(4)(b) would unconstitutionally destroy U.S. Bank as Trustee's means of enforcing the Mortgage contract, and would discharge Article 13's obligations under the contract. The Contract Clause provides that "[n]o State shall … pass any … Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. The Contracts Clause prevents the New York Legislature from upsetting the settled expectations and vested contractual

rights of mortgage lenders such as U.S. Bank as Trustee. *See Sveen v. Melin*, 138 S.Ct. 1815, 1821 (U.S. 2018).

In *Sveen*, the United States Supreme Court reiterated a two-part test to determine whether a state law violates the Contracts Clause. *Id.* at 1821-22. A court should first determine "whether the state law has 'operated as a substantial impairment of a contractual relationship.'" *Id.* (quoting *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244-245 n.16, 98 (U.S. 1978)). The court should examine "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Id.* at 1822. If the court determines that there is a substantial impairment to the contract, it should then determine whether the law "is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id.* (quoting *Energy Reserves Group, Inc. v. Kansas Power & light Co.*, 459 U.S. 400, 411-412 (U.S. 1983)). Here, this analysis demonstrates that retroactive application of CPLR § 213(4)(b) would unreasonably and substantially impair, ad hoc, U.S. Bank as Trustee's contract rights for no significant or legitimate reason.

> **i.** **Retroactive Application of CPLR § 213(4)(b) Would Substantially Impair U.S. Bank as Trustee's Contractual Right to Enforce the Mortgage Contract.**

Application of CPLR § 213(4)(b) would render U.S. Bank as Trustee unable to enforce the Consolidated Mortgage, which is a contract, and would discharge Respondent's obligations, eliminating U.S. Bank as Trustee's ability to ever obtain the benefit of its bargain.

"To know the obligation of a contract we look to the laws in force at its making." *W.B. Worthen Co. ex rel. Bd. Of Comm'rs of St. Imp. Dist. No. 513 of Little Rock, Ark. V. Kavanaugh,* 295 U.S. 56, 60 (U.S. 1935) (citing *Sturges v. Crowninshield,* 17 U.S. 122, 184 (U.S. 1819); *Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, 429 (U.S. 1934)). To assess whether an impairment is substantial, we look at "the extent to which reasonable expectations under the contract have been disrupted." *Buffalo Tchrs. Fed'n v. Tobe,* 464 F.3d 362, 368 (2d Cir. 2006) (quoting *Sanitation & Recycling Indus.,* 107 F.3d 985, 993 (2d Cir. 1997)). "The obligations of a contract are impaired by a law which renders them invalid, or releases or extinguishes them. . . ." *Blaisdell,* 290 U.S. at 433 (citation omitted); *Sturges,* 17 U.S. at 197–98 (holding invalid, as violative of the Contract Clause, a state insolvent law, which discharged the debtor from liability, as applied to contract in existence when the law was passed); *Davis v. Supreme Lodge Knights of Honor,* 165 N.Y. 159, 170 (N.Y. 1900). Furthermore, the Supreme Court has stated that "[n]othing can be more material to the obligation than the means of enforcement. . . ." *Blaisdell,* 290 U.S. at 429–30 (quotation omitted).

24

U.S. Bank as Trustee is a mortgagee and holder of a promissory note. Retroactive application of CPLR § 213(4)(b) would strip U.S. Bank as Trustee's validly established, contractual remedy of foreclosure, and U.S. Bank as Trustee would be left without remedy for Abbott's failure to repay the Loan. Thus, here, retroactive application would unquestionably and substantially impair U.S. Bank as Trustee's contractual rights. It would also allow Article 13 a windfall, permitting it to obtain the benefit of the Property without a valid encumbrance that Article 13 had record notice existed at the time it obtained the Property.

### ii. No Legitimate and Necessary Public Interest Supports the Retroactive Destruction of Mortgage Contracts.

Where, as here, retroactive application of a state law would substantially impair a litigant's contractual rights, the state must show a significant and legitimate public purpose behind the law. *Energy Reserves Group,* 459 U.S. at 411–12 (U.S. 1983); *Sanitation & Recycling Indus.,* 107 F.3d at 993. "A legitimate public purpose is one 'aimed at remedying an important general social or economic problem rather than providing a benefit to special interests.'" *Buffalo Tchrs. Fed'n,* 464 F.3d at 368 (quoting *Sanitation & Recycling Indus.,* 107 F.3d at 993). Any impairment chosen by the Legislature "must also be one where the means chosen are reasonable and necessary to meet the stated legitimate public purpose." *Id.* at 369 (citing *U.S. Tr. Co. of New York v. New Jersey, 431 U.S.* at 22–23 (U.S. 1977)). "A law that works substantial impairment of contractual relations must be

specifically tailored to meet the societal ill it is supposedly designed to ameliorate." *Sanitation & Recycling Indus.,* 107 F.3d at 993 (citing *Allied Structural Steel Co.,* 438 U.S. at 243) (discussing *Blaisdell,* 290 U.S. 398).

No significant and legitimate purpose supports the irrational and unnecessary destruction of mortgage contracts that results if FAPA is applied retroactively. The New York Legislature expressed an intent only vaguely to "eliminate abusive and unlawful litigation tactics . . . ," 2022 NY Senate Bill S5473D, without any identification of such tactics or any supportive legislative findings to demonstrate their existence or the legitimacy of the referenced vague concerns. In enacting CPLR § 213(b)(4) retroactively, the New York Legislature inappropriately seeks to derive ungranted police power under the auspice that some undocumented exigency of public welfare exists. It is fundamental that "emergency does not create power, emergency may furnish the occasion for the exercise of power." *Blaisdell,* 290 U.S. at 398. Notwithstanding, to justify the exercise of police power to address an emergency, the emergency must actually exist and the legislative act must be designed to actually address the emergency. *See e.g. Id.*

Without notice, on December 22, 2022, when FAPA went into effect, every mortgage, like the one held by U.S. Bank as Trustee, that had been the subject of a prior foreclosure action six or more years prior, was automatically deemed

unenforceable. *See* CPLR § 213(b)4). No mortgagee could have known that it was supposed to seek an "express judicial determination, made upon a timely interposed defense, that the instrument was not validly accelerated," as is now newly required. *See* CPLR § 213(b)(4). Before FAPA, a mortgagee was free to pursue an affirmative defense that a prior foreclosure action commenced by a plaintiff without standing was a nullity and did not accelerate a mortgage debt. *E.g. MLB Sub I, LLC* 96 N.Y.S.3d at 597. Ad hoc changes to CPLR § 213(4)(b) now effectively prohibit and deem the mortgage accelerated by default whenever there was a prior foreclosure action, even if wholly unauthorized. Destruction of a mortgagee's affirmative defense and total destruction of the right to enforce its mortgage is not a reasonable, tailored, or necessary end legitimized by New York Legislature's mere declaration that it seeks to "eliminate abusive and unlawful litigation tactics." Thus, the New York Legislature fails to provide a significant and legitimate purpose that would justify CPLR § 213(4)(b)'s unreasonable substantial impairment—in fact complete destruction—of innumerable mortgage contracts. *See Id.*

Moreover, the law is clearly overbroad as applied here. Article 13 is apparently a sophisticated real estate investor who took title to the Property with record notice of U.S. Bank as Trustee's Consolidated Mortgage and with record notice of CMC's 2007 Action pursuant to the recorded notice of pendency. *See*

27

*Sprint Equities (N.Y.), Inc. v. Sylvester,* 896 N.Y.S.2d 134, 135 (N.Y. App. Div. 2010) ("The New York Recording Act (Real Property Law § 290 et seq.) protects a good faith purchaser for value from a prior unrecorded interest in real property provided, inter alia, that the subsequent purchaser's interest is the first to be duly recorded."). Article 13 is not a good-faith purchaser of the Property without notice. Pursuant to centuries of established New York state real property law, it took its interest in the Property subject to the lien of U.S. Bank as Trustee's Consolidated Mortgage. *Jackson ex dem. Merrick v. Post,* 15 Wend. 588 (N.Y. Sup. Ct. 1836). FAPA was also not designed to apply to provide windfall benefits to sophisticated investors like Article 13; it was designed to protect individual residential mortgage loan borrowers. Finally, there is no evidence in the record to suggest that U.S. Bank as Trustee has engaged in unidentified abusive or unlawful litigation tactics. Thus, CPLR § 213(4)(b) is not in any way tailored to ameliorate any societal problem indicated by the New York Legislature.

Comparing FAPA to other legislative acts designed to retroactively impair the obligations of mortgage contracts demonstrates the inadequacy of the New York Legislature's stated basis for enacting FAPA as a rational for the retroactive effects of CPLR §213(4)(b). In *W.B. Worthen Co.,* 295 U.S. at 60, the United States Supreme Court struck down three Arkansas legislative acts concluding that the acts imposed a substantial impairment and unreasonably interfered with the

28

obligations of mortgage contracts. *Id.* The acts in issue did not explicitly destroy the mortgage contracts, instead they enlarged the time for payment after notice; reduced a penalty; extended the time to appear and answer after personal service; extended the time for payment after a decree before the property could be sold; eliminated the ability to recover costs and attorneys' fees; extended the time of redemption following a sale; decreased the interest rate; and eliminated a purchaser's right to go into possession during the term allowed for redemption, inter alia. *Id.* at 59. In support of the acts, the Arkansas Legislature merely declared that there was an emergency, "which was stated to endanger the peace, health, and safety of a multitude of citizens." *Id.* at 59. Recognizing that the enforceability of contracts is an important Constitutional protected interest, and that the Arkansas acts together left the mortgage holders without an effective remedy for six years, Justice Cardozo writing for the Court explained that "[n]ot even changes of the remedy may be pressed so far as to cut down the security of a mortgage without moderation or reason or in a spirit of oppression. Even when the public welfare is invoked as an excuse, these bounds must be respected." *Id.* at 60 (distinguishing *Blaisdell,* supra.). The New York Legislature in enacting FAPA went even further to impair mortgage contracts than the Arkansas Legislature, but like the Arkansas Legislature, the New York Legislature insufficiently rationalized its decision on a vaguely stated excuse of public welfare.

As another example, in 1934, the Supreme Court held that the Minnesota Mortgage Moratorium Law, passed in 1933, during the height of the Great Depression substantially impairs mortgage contracts but did not violate the Contracts Clause. *Blaisdell,* 290 U.S. at 448. The Minnesota act extended the period of redemption from foreclosure sales, as was deemed equitable by the district court, but required that during the extended period, the mortgagor was required to apply all or a reasonable part of the income or rental value, taxes, insurance, interest and mortgage indebtedness, as determined by the district court. *Id.* at 416-9. The Minnesota act also forbid maintenance of a deficiency judgment action prior to May 1, 1935, and until the redemption period expired. *Id.* Nevertheless, the Court held that the Minnesota act did not vex the Constitutional prohibition against legislative acts impairing the obligations of contracts because the Minnesota act was passed during a time when a great emergency existed in Minnesota that furnished a proper occasion for the exercise of the State's police power to temporarily and reasonably address a legitimate end. *Id.* at 429–30. The Minnesota act was a constitutional exercise of a State's police power because it was rationally restrained; it was temporary and conditional; it did not destroy mortgage contracts, alter their interest rates, or change the time for redemption without comparably requiring the mortgagor to make required payments for carrying the property. *See Id.* at 425. Moreover, it was made to legitimately address

an actual emergency supported both by legislative findings and the indisputable existence of the Great Depression. *Id.* at 422-3.

The illegitimate Legislative purpose for FAPA is not at all similar to that supporting the Minnesota Legislature's reasonable exercise of retroactive legislation during the height of the Great Depression and the means chosen—CPLR § 213(4)(b) are far more drastic Here the New York Legislature's purpose for FAPA does not even begin to explain why it is reasonable to retroactively eliminate a mortgagee's affirmative defense that a prior foreclosure action was commenced by a party without standing. *See* CPLR § 213(4)(b). The judiciary has always made factual and legal determination involving questions of standing. Moving forward, where mortgagees are provided with notice and opportunity to interpose defenses and seek express judicial determinations that an action is a nullity because it is commenced without standing may make sense. On the other hand, retroactively holding mortgagees to a requirement with which they had no opportunity to comply, and which is in contradiction to existing expectations based on well settled New York law, undermines "[t]he policy of protecting contracts against impairment [which] presupposes the maintenance of a government by virtue of which contractual relations are worth while. . . ." *Blaisdell,* 290 U.S. at 435.

### B. FAPA, Applied Retroactively, Would Violate U.S. Bank as Trustee's Substantive Due Process Rights Guaranteed by The Fifth and

**Fourteenth Amendments to the United States Constitution and the New York Constitution.**

FAPA must also be construed to comply with fundamental principles of due process. *Regina*, 35 N.Y.3d at 375. Here, retroactive application would not comport with guaranteed rights to substantive due process. Both New York Constitution's Due Process Clause and the Due Process Clause of the Fifth Amendment provide that no person shall be "deprived of life, liberty, or property, without due process of law. . . .'" *U.S. v. Salerno,* 481 U.S. 739, 746 (U.S. 1987) (quoting U.S. Const. amend. V); N.Y. Const., art. I, § 6. "[T]he constitutional analysis must involve a balancing of equities." *Holly S. Clarendon Tr. v. State Tax Comm'n,* 43 N.Y.2d 933, 934 (N.Y. 1978). To comport with these principals, FAPA must be supported by "a legitimate legislative purpose furthered by rational means." *Regina*, 35 N.Y.3d at 375 (quotation omitted). "Because [r]etroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation, the justifications for [prospective legislation] may not suffice for [the retroactive aspects]." *Id.* (quotation omitted). To determine whether the court can apply a statute retroactively, it must look to "the relationship between the length of the retroactivity period and its purpose. . . ." *Id.* at 376. Concerns are heightened where new laws "affect contractual or property rights, matters in which predictability and stability are of prime importance." *Id.* at 382 (citing *Landgraf,* 511 U.S. at 271).

32

Here, retroactive application of FAPA to the current case is not supported by any legitimate legislative purpose, it is not defined to a short period, and it would upset U.S. Bank as Trustee's vested rights. It also would harmfully interfere with U.S. Bank as Trustee's reasonable reliance on longstanding precedent allowing the actual holder of a promissory note and the actual assignee of a mortgage to contest the validity of an unauthorized parties' attempt to accelerate its debt. The District Court has already concluded that U.S. Bank as Trustee raised a genuine issue of material fact for trial regarding whether CMC was the assignee of the First Mortgage and holder of the Consolidated Note at the time it commenced the 2007 Action. (R 160-162.) This ruling should stand; moreover, U.S. Bank as Trustee should continue to have the contractual right to commence an action to foreclose the Consolidated Loan.

U.S. Bank as Trustee actually and justifiably relied on then-existing New York law and did not seek an express judicial determination that CMC improperly commenced foreclosure because there was no such requirement in 2017 to ensure preservation of the defense that a plaintiff commencing foreclosure but who lacks standing does not accelerate the debt. *MLB Sub I, LLC,* 96 N.Y.S.3d at 597; *Burke,* 943 N.Y.S.2d at 543. Obliterating settled expectations and vested rights is not a rational means of advancing a forward-looking statute and should not be allowed. *See Holly S. Clarendon Trust,* 43 N.Y.2d at 935. ("[T]he apparent absence of a

33

persuasive reason for retroactivity, with its potentially harsh effects, offends constitutional limits.").

### C. Retroactive Application of FAPA Would Violate U.S. Bank as Trustee's Guaranteed Constitutional Right to Procedural Due Process.

"In general, procedural due process claims challenge the procedures used by the government in effecting a deprivation of a right. . . ." *Mark G. v. Sabol,* 93 N.Y.2d 710, 723 (N.Y. 1999). "[P]rocedural statutes 'may not retroactively destroy rights already accrued.'" *Wade v. Byung Yang Kim,* 250 A.D.2d 323, 325 (N.Y. App. Div. 1998) (quotation omitted); *Wood v. Oakley,* 11 Paige Ch. (N.Y. Ch. 1845).

U.S. Bank as Trustee as "a lienholder has a property interest, albeit a 'nonpossessory' interest." *Permanent Mission of India to the United Nations v. City of New York,* 551 U.S. 193, 198 (U.S. 2007) (quotation omitted). Furthermore, U.S. Bank as Trustee has a vested right to pursue a legal cause of action in foreclosure or otherwise. *See Periconi v. State,* 398 N.Y.S.2d 959 (Ct. Cl. 1977) ("The right to enforce a legal cause of action is a vested right within said constitutional proscription. . . ."). Extirpation of an accrued vested right by retroactive legislation is impermissibly unconstitutional as violative of the guaranteed right to procedural due process. *See id.*

Ex post facto enactment of new CPLR § 213(4)(b) cannot ablate U.S. Bank as Trustee's vested right to assert an affirmative defense that the 2007 Action was impermissibly commenced by a party lacking standing to foreclose. The Legislature did not afford U.S. Bank as Trustee a reasonable grace period for the commencement of an action before the new bar took effect "immediately" in December 2022. *See Bros. v. Florence,* 95 N.Y.2d 290, 300 (N.Y. 2000) (citation omitted) (Where "a limitations period is statutorily shortened, or created where none existed before, Due Process requires that potential litigants be afforded a "reasonable time . . . for the commencement of an action before the bar takes effect"). Moreover, U.S. Bank as Trustee had asserted its affirmative defense under applicable existing New York law prior to the enactment of CPLR § 213(4)(b). Enactment of CPLR § 213(4)(b) after the fact cannot change that.

**D. Retroactive Application of CPLR § 213(4)(b) Would Accomplish a Taking Without Just Compensation, Violative of the Takings Clause of the Constitution.**

In addition, retroactive application of CPLR § 213(4)(b) would amount to a governmental taking, implicating the Takings Clause of the United States Constitution. U.S. Const. amend. V. ("Nor shall private property be taken for public use, without just compensation."); *see also Kelo v. City of New London*, 545 U.S. 469, 473 n.1 (U.S. 2005) (incorporating due process protections via the Fourteenth Amendment). It is beyond question that "a mortgagee's lien is 'a

35

compensable property interest within the meaning of the Fifth Amendment.'" *Bailey v. United States,* 78 Fed. Cl. 239, 276 (Fed. Cl. 2007) (citations omitted). "It is against all reason and justice" to presume that the legislature has been entrusted with the power to enact "a law that takes *property* from A and gives it to B." *Calder v. Bull,* 3 U.S. 386, 388 (U.S. 1798).

Retroactive application of a similar statute eliminating a creditor's lien was unconstitutional under the Takings Clause. *U.S. v. Security Indus. Bank*, 459 U.S. 70 (U.S. 1982) ("[T]here is substantial doubt whether the retroactive destruction of the appellees' liens in these cases comports with the Fifth Amendment."); *see also Armstrong v. United States*, 364 U.S. 40, 48 (U.S.1960) ("The total destruction by the Government of all value of these liens, which constitute compensable property, has every possible element of a Fifth Amendment 'taking" and is not a mere 'consequential incidence' of a valid regulatory measure."). The New York Legislature may not take U.S. Bank as Trustee's investment and give it to Article 13 for free because it would violate the Takings Clause.

## CONCLUSION

U.S. Bank as Trustee respectfully requests that the Court reverse the District Court's Order.

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P.

32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R.

App. P. 32(f) this document contains 8,447 words.

SUBMITTED BY:

 /s/Kathleen M. Massimo
Kathleen M. Massimo
Houser LLP
60 E. 42nd Street, Suite 2200
New York, New York
Tel: (212) 490-333
kmassimo@houser-law.com

37